UNITED STATES of America,
Plaintiff-Appellee,

v.

Marvin M. MARTIN, Defendant-
Appellant.

No. 74–1303.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1974.

Decided Nov. 27, 1974.

Harvey M. Silets, Theodore A. Sinars, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Royal B. Martin, Jr., Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD and SPRECHER, Circuit Judges.

SWYGERT, Chief Judge.

Defendant-appellant Marvin M. Martin was found guilty by a jury of five counts of failing to file employer quarterly federal income tax returns in violation of 26 U.S.C. § 7203.[1] He is appealing the conviction on the basis of alleged errors in the jury instructions and voir dire examination. We reverse.

From 1963 to 1973 Martin was a partner in and operator of the Martin Cartage Company which does business in the Chicago area. The five quarters charged in the information were the third quarter of 1967 and all four quarters of 1968. There was no dispute that the defendant was required to file these returns. The question was whether this failure to file was knowing and willful.

The Government called four witnesses: an IRS employee; a Revenue Officer; the defendant's bookkeeper; and a records maintenance manager for the Social Security Administration. Evidence was introduced to show that the defendant also failed to file returns for other quarters both prior and subsequent to those charged. The defense presented no testimony, but attempted by cross-examination and documentary evidence to develop the theory that Martin did not file the returns because he was under the mistaken assumption that returns could not be filed without paying the tax due at the same time. The jury returned a verdict of guilty on all five counts and Martin was subsequently sentenced to a total of two and one-half years imprisonment and received fines totaling $5,000.

I

Defendant's first contention is that the instructions given the jury were so

---

1. 26 U.S.C. § 7203 reads:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

confusing as to constitute reversible error. In accordance with United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), the following instruction on willfulness, which is not being attacked, was given:

The word "wilfully" as used in connection with this offense means with a bad or evil purpose of deliberately intending not to file a return which the defendant knew he should have filed in order to prevent the government from knowing the extent of his tax liability.

However, over defendant's objection, the district court also gave the following instruction based on United States v. Matosky, 421 F.2d 410 (7th Cir. 1970):

If you find that the government has proven beyond a reasonable doubt that the defendant's failure to timely file the tax returns were wilfull, then I instruct you that his reasons for failing to so file are irrelevant and should not be considered by you.

■ We think the court erred in giving this *Matosky* instruction. There was no basis in the evidence or arguments to support such an instruction. The *Matosky* case involved a situation quite different from the one before us. In that case the defendant was prosecuted for failure to timely file his income tax returns for three years. Evidence was introduced that the defendant had fled from New York to Chicago to avoid a state prosecution and that he did not file the returns in order to avoid detection and apprehension. It was in this context of an extraneous non-tax related defense that the court stated that the reasons for failing to file were irrelevant. Unlike Martin, Matosky's reasons had no relation to the question of his knowledge that the returns had to be filed. Indeed, the *Matosky* opinion itself is clear that its reference to the irrelevance of the reasons for a failure to file does not encompass reasons relating to the knowledge or willfulness question:

Rather, the Government has proven its case when it has established beyond a reasonable doubt: that the defendant was required to file a return; *that he knew that he was so required*; and *that he willfully* or purposefully, *as distinguished from* inadvertently, negligently, or *mistakenly, failed to file* such a return. His reasons for failing to so file are irrelevant under § 7203, *so long as the above facts are shown.* (footnote omitted and emphasis added).[2]

Since there was no evidence or argument relating to extraneous reasons, this additional instruction should not have been given.

■ Having determined that the instruction was improper we still must consider whether it was reversible error. The Government argues that this instruction could not have confused the jury if their deliberations followed a perfectly logical progression. The instruction did indicate that the jurors were first to determine the question of willfulness and only when they had concluded that the failure to file was willful were they to disregard the reasons for failure to file. The defense theory was presented in the instructions on willfulness. Thus, the Government contends that the jury would not have even reached the erroneous instruction until it had fully considered the willfulness instructions and rejected the defendant's reasons for not filing. Following this reasoning, the error would be harmless.

The problem with this argument is that we cannot assume that the jurors followed the analytical process set forth by the Government. The jurors were entitled to assume that they were not given irrelevant instructions. Proceeding on this assumption, they could have concluded that they were being told to ignore reasons for not filing which were at least raised during the trial. But the only reason offered concerned Martin's belief that he could not file without simultaneously paying the tax. The result

2.  421 F.2d at 413.

might well have been great confusion or possibly a determination that the instructions were inconsistent. Unfortunately, we do not know how this possible confusion or inconsistency was resolved. It may be that the jurors concluded that any reason for not filing was irrelevant to their entire deliberations. Because of this possibility we believe the defendant is entitled to a new trial.

## II

■■ Martin also attacks the failure to give certain instructions tendered by the defense. A trial judge has some latitude in deciding how to charge a jury. The instructions must adequately cover the law, but there is no requirement that they be given in the form and language requested. Elbel v. United States, 364 F.2d 127, 134 (10th Cir. 1966).

■■ Defendant's proposed instruction No. 23 purported to define the term "negligence."[3] There was no contention, however, that Martin's failure to file was due to negligence as defined in this proposed instruction. Moreover, the trial judge did give a specific intent instruction in addition to defining the terms "knowingly" and "willfully." The jury was adequately charged as to this aspect of the law and there was no necessity that this additional instruction be given.

■■ Defendant's instructions Nos. 25 and 26, which delineated specific factors the jury could weigh in determining whether the failure to file was willful, also were not given.[4] Detailed and adequate instructions on the issue of willfulness were given. The trial judge is not under a duty to unduly emphasize certain matters which the defendant considers favorable. United States v. Terry, 362 F.2d 914, 916 (6th Cir. 1966). It was not an abuse of discretion to refuse these instructions, although it does appear that a better balance might have been reached between those instructions emphasizing matters favorable to the prosecution and those favorable to the defense.

---

3. Proposed instruction No. 23:
   Negligence consists of a certain mental attitude toward the consequences of one's act. He is negligent when one does not desire the consequences, and does not act to produce them, but is nevertheless indifferent or careless whether they happen or not, and, therefore, does not perform the act notwithstanding the risk that the consequences may happen.

4. These proposals read:
   (25) In determining whether the Government has proven beyond a reasonable doubt Mr. Martin's intent or wilfullness to commit the crimes charged, you may consider his prior history of filing or lack of filing returns similar to those charged in the information as well as his filing of other returns required to be filed by him, such as his personal income tax returns and the partnership tax returns of Martin Cartage Company. In considering the question of his intent you may consider such things as whether the Internal Revenue Service was aware of his filing or lack of filing; whether he was ever advised that failure to timely file such returns could be a criminal act; whether the Internal Revenue Service ever charged him with a fraud penalty—as distinguished from a delinquency or negligence penalty—for not having filed any return; and any other relevant fact which may relate to whether the Government has convinced you beyond a reasonable doubt that Mr. Martin's actions or failure to act were "wilfull" within the meaning of the statute.

   (26) In considering whether the Government has proven beyond a reasonable doubt that Mr. Martin's failure to file the returns in question—if, of course, you first are convinced that such returns were not filed—was wilfully or intentionally done, you may consider whether he was warned or put on notice by the Internal Revenue Service in their prior dealings with him that such failure could constitute a crime. If they did so warn him and he persisted in not filing, such fact would tend to establish that he acted wilfully. On the other hand, if he was not so warned, then his continuing to fail to file timely may be found by you to be the result of his good faith belief that his actions were not improper or illegal and his failure to file, if any, would not be wilful or intentional.

■ Defendant also contends that his proposed instruction No. 27,[5] which sets forth what was admittedly a correct statement of the distinction between a delinquency penalty and a fraud penalty, should have been used. This distinction was supposed to be relevant to the defendant's state of mind since his previous conduct had resulted only in delinquency penalties. As the Government indicates, however, there was no evidence that Martin was aware of the difference between a delinquency penalty and a fraud penalty. Therefore, we cannot say that it was error to refuse this instruction.

### III

■ Finally, Martin claims that the scope of the voir dire examination was too restrictive. The trial judge conducted most of the voir dire himself. The specific objection being raised on appeal is the court's rejection of the defendant's proffered questions 7 through 10.[6] It is difficult to determine when a trial judge had abused his discretion in this area. The present test appears to be that set forth in our opinion in United States v. Lewin, 467 F.2d 1132, 1137 (7th Cir. 1972):

> At some happy mesne point, there must be permitted sufficient questioning to produce, in the light of the factual situation involved in the particular trial, some basis for a reasonably knowledgable exercise of the right of challenge.

The particular aspects of the instant trial indicate that the general subject area at which questions 7 through 9 were aimed, namely, the prospective jurors' relationship with and attitude toward the Government and government agent witnesses, should have been addressed on voir dire.[7] Of the four witnesses called by the United States, three were employees of government agencies. Thus, it was particularly important for the defendant to know of any prejudices the jurors may have had about the Government or about the credibility of government agents. Specifically, we think question 9 concerning the weight that would be given a government agent's testimony was particularly important. See Chavez v. United States, 258 F.2d 816, 819 (10th Cir. 1958). The Government argues that the trial judge, in effect, asked this question, since he told the entire jury panel at the start of the voir dire examination that they were not to consider whether a witness was a government employee for purposes of determining credibility; later he asked each juror about his ability to be impartial. Mere admonitions, however, are not enough. The sole purpose of voir dire is not to tell potential jurors that they are to be fair and then ask them if they think they can be impartial. The defendant's proposed questions were meant to elicit specific attitudes and prejudices. We cannot assume that a juror would state that he could not be impartial merely because he had a close relationship with the government or a

---

5. Proposed instruction No. 27:
   Under the law, when the Internal Revenue Service imposes a delinquency penalty for failure to file a return, a penalty for fraud in failing to file such return cannot also be imposed. Therefore, when the Internal Revenue Service imposes a delinquency penalty for the failure to file a return, it is the law that such failure has not been considered by the Government to be fraudulent nor criminal in nature.

6. Proposed questions for voir dire examination:
   7. Do you have any relative or friend who is now or has ever been employed by an agency of the Federal Government?

8. Are you or is any member of your family a member of any organization pertaining to law enforcement?
   9. Do you feel that because a witness is a Government Agent that his testimony is therefore entitled to more weight than one who is not an agent?
   10. Do you receive any pension, retirement annuity, or other benefit from the United States Government or from any state government? If so, do you feel that as a result thereby, you would favor the prosecution?

7. Unlike United States v. Staszcuk, 502 F.2d 875 (7th Cir. 1974), the trial judge did not conduct a thorough, detailed voir dire.

high regard for the credibility of government agents. Such questions should have been asked directly.

As to question 10, concerning United States or state pensions or benefits, we think it would have been better to have asked this also, since the crime charged was related to the non-payment of social security taxes. Considering that the judge did ask the jurors whether they could give the IRS a fair trial at that time of the year, defendant was entitled to have question 10 asked.

The judgment of conviction is reversed and this cause is remanded for a new trial.

FAIRCHILD, Circuit Judge (dissenting).

In my judgment the matters deemed errors in Parts I and III did not affect the result and were harmless.