**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Clifford JACKSON, Defendant-Appellant.**

**No. 76–2074.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1977.

Decided Jan. 6, 1978.

Rehearing and Rehearing In Banc
Denied March 6, 1978.

Marc Kadish, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Joseph N. Hosteny, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, TONE and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

The main issue in this appeal is whether the district court plainly erred in a criminal case by its failure to read an instruction to the jury as to the government's burden of proof on the issue of self-defense.

I

The case arises out of an altercation between the defendant, Clifford Jackson, and a federal correctional officer, William Neris, in the visiting room of the Metropolitan Correctional Center (MCC) in Chicago, Illinois. The grand jury's indictment charged that the defendant assaulted, in violation of

18 U.S.C. § 111,[1] a federal correctional officer while he was in the performance of his official duties. The case was tried over a four-day period before a jury and the defendant was found guilty. He was sentenced to three years in the custody of the Attorney General, consecutive to a fifteen-year sentence imposed in an unrelated case. The defendant appeals his assault conviction.

A brief recital of the evidence presented at trial will show the gist of the government's case and the basis for the defendant's claim that a clearer self-defense instruction was required. The prosecution relied primarily on the testimony of Officer Neris and three other witnesses present in the waiting room of the MCC during the fight. The testimony established that there was a general rule known to all visitors of the MCC that physical touching in the visiting room was limited to a single embrace upon entering and another upon leaving the room. The officer on duty in the visiting room was responsible, as part of his duties, for seeing to it that that rule was enforced.

Prior to the day of the altercation, Officer Neris had several times ordered the defendant and his wife to stop violating the visiting room's physical touching rule.[2] On the day of the incident, Officer Neris first told two of the prosecution's witnesses to stop kissing and then told the defendant and his wife to untangle their legs.[3]

The defendant responded angrily and cursed loudly at Officer Neris (Tr. at 129, 220 and 365). Officer Neris turned away from the defendant, walked across the room and called the lieutenant, who was his supervisor, informing him that an inmate was shouting and asking him to send assistance. (Tr. at 129). Officer Neris then went to his desk which was on the other side of the room from where the defendant and his wife had been seated. (Tr. at 130, 220).

Defendant moved across the room toward the officer shouting at him, telling him to stop picking on defendant and his wife, and threatening to strike the officer. In response, Officer Neris told defendant to "try it." (Tr. at 131). Officer Neris claimed that the defendant then pushed him in response to which the officer picked up a plastic garbage can to use in self-defense. The defendant knocked it out of his hand and proceeded to knock him down, strike him in the face several times and push his head several times into a metal rail on a sofa. (Tr. at 132). Additional officers arrived at the visiting room, restrained the defendant after a struggle and took him away kicking and screaming. Officer Neris was not hospitalized, but he did miss a full week of work recuperating from the attack.

The defendant presented two witnesses on his behalf, Anise Jackson, his wife, and Frank Mora, an inmate who was in the visiting room at the time of the incident. Mrs. Jackson's testimony, corroborated by Mora's,[4] was the basis for the defendant's

---

1. Section 111 provides:

 Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

 18 U.S.C. § 111. Included in the list of persons in § 1114 is "any officer or employee of any United States penal or correctional institution." 18 U.S.C. § 1114. There is no dispute that William Neris was such an employee.

2. On two prior occasions Officer Neris reported the activities of the defendant and his wife in the visiting room to responsible officials in the MCC. After the first incident Officer Neris spoke to the defendant's social worker about the problem. After the second, and more serious incident, Officer Neris filed a more formal report with the lieutenant who was his immediate superior at the facility.

3. According to the witnesses, defendant and his wife were sitting side-by-side with their feet up on a small table. The defendant's leg was crossed over his wife's on that table. (Tr. at 128, 218 and 250). There is no dispute that the defendant's act violated the rule of the visiting room regarding physical contact.

4. Mr. Mora's testimony was severely impeached by the prosecution. Apparently Mr. Mora had twice before told the U. S. Attorneys that he could not remember anything about the incident because at the time he was experiencing methadone withdrawal symptoms. (Tr. at 477–78). Also, on the day of the altercation, Mr. Mora had told an FBI Agent, Charles

claim of self-defense. She testified that in response to defendant's statements "Officer Neris picked up a waste basket . . . and was getting ready to swing it at Clifford [the defendant] and Clifford knocked it out of his hands." (Tr. at 438). Thus, it was the defendant's theory of the case that Officer Neris' act of picking up the plastic garbage can caused the defendant to respond reasonably with force in self-defense.

The district court held a hearing on instructions in accordance with Fed.R.Crim.P. 30.[5] In furtherance of the defendant's self-defense theory, his counsel prepared the following jury instruction:

> To sustain the charge of assaulting, resisting or impeding certain officers or employees, the government must prove the following propositions:
>
> 1. That William Neris was an officer or employee of a United States penal institution.
> 2. That William Neris was engaged in the performance of his official duties.
> 3. That the Defendant Clifford Jackson forcibly resisted, opposed, impeded, intimidated, or interfered with William Neris.

> 4. That the Defendant was not justified in using the force which he used.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the Defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.[6]

The instruction was objected to by the government and the court held that "Paragraph 4 should be made the subject of a separate instruction." (Tr. at 513). At that time, the court stated expressly that "the defendant is free to tender an instruction that covers Paragraph 4 . . . when we get to it." (Tr. at 513–14, 523).

After a recess, both the prosecutor and defense counsel tendered instructions on the self-defense issue. The defendant's proposed instruction specifically stated, "[i]f evidence of self-defense is present, the Government must prove beyond a reasonable doubt that the defendant did not act in self-defense."[7] No comparable language

Kempf, "that the attack was uncalled for." (Tr. at 496).

**5.** That rule reads in relevant part:

> At the close of the evidence, . . . any party may file written requests that the court instruct the jury on the law as set forth in the requests. . . . The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. . . .

**6.** The instruction was based on Illinois Pattern Jury Instructions, Criminal § 25.05.

**7.** The defendant's proposed instruction was as follows:

> If the defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of bodily harm, he had the right to employ force in order to defend himself.

> The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was then about to do him bodily harm.

> If evidence of self-defense is present, the Government must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the Government has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty.

> If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of bodily harm, he would be justified in using force in self-defense, even though it may afterwards have turned out that the appearances were false. If these requirements are met he could use force even though there was in fact neither purpose on the part of the other person to do him bodily harm, nor imminent danger that it would be done.

appeared in the prosecutor's proposed instruction.[8] Nonetheless, the court announced that it would read the prosecutor's substantially shorter version to the jury. Defense counsel did not object to the instruction for its failure to make clear that the Government had the burden of proving the absence of self-defense beyond a reasonable doubt. Instead, counsel objected to the instruction on the basis that it inadequately advised the jury on the issue of the defendant's reasonable, but mistaken, belief that he was threatened with bodily harm. (Tr. at 528–29). At no time after this colloquy did the defendant object to the jury instruction on self-defense.[9]

In the defendant's closing argument, however, he did make reference to the issue of the government's burden of proof as to the self-defense claim. Defense counsel argued:

> If we interpose that which is called self-defense, we do not have to prove that it was self-defense but if that additional tree of self-defense is raised, then the Government has the burden too of knocking that down beyond a reasonable doubt. We say the Government can't do it.[10]

(Tr. at 565).

In instructing the jury, the court read the general instruction quoted earlier, without paragraph 4 included, which stated that the prosecution had the burden to prove all the elements of section 111 beyond a reasonable doubt and also read the prosecution's instruction on self-defense.[11] Thereafter, the jury deliberated and found the defendant guilty.

## II

The jury instruction issue must be divided into two parts. First, did defense counsel adequately object to the court's self-defense instruction or did he instead waive that issue? Second, if the objection to the instruction was waived, did the district court's failure to read an instruction that clearly placed the burden of proof on the self-defense issue on the government nevertheless constitute "plain error?"

■ As to the waiver issue, we hold that the defendant did not adequately object to the court's instruction on self-defense.[12] A party's objection to a jury in-

---

The instruction is quite similar to that proposed in 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 41.19 (1977).

**8.** The government's proposed instruction was as follows:

> A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. Therefore, if you find from your consideration of the evidence that Clifford Jackson used only such force as was reasonably necessary to defend himself against the imminent use of unlawful force by Officer William Neris, you should find him not guilty, even if the Government has otherwise proved the elements of the charge.

**9.** At the end of the Rule 30 hearing, the court invited counsel for the defense to state his objections to the rulings on his instructions in order "to complete the record." (Tr. at 531). Defense counsel declined the offer by saying, "I think that my position has been made clear during the conference itself, Judge." (Tr. at 532).

**10.** Earlier in the argument defense counsel also argued the following as to the government's burden of proof on the issue of self-defense:

> Moreover, it is not our burden to prove that it was self-defense. The burden never shifts to us. The Judge will tell you—it is almost like, I call it, there is a pathway that leads to a final decision by the jury. In the pathway is a tree. That is the tree of reasonable doubt. The Government has to chop that down, branch by branch. All of it has to be removed before you can find the defendant guilty.

(Tr. at 565).

**11.** *See* note 8 *supra.*

**12.** When the record contains evidence sufficient to support a finding of self-defense, it is the government's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *See Mullaney v. Wilbur,* 421 U.S. 684, 704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *United States v. Corrigan,* 548 F.2d 879, 883 (10th Cir. 1977). Failure to give this instruction, if properly objected to, is ground for reversal. In *Corrigan* the court emphasized the fact that the jury instruction was specifically objected to for failure to assign properly the burden of proof and therefore was preserved for appeal. *Id.* at 881. As shown below, we conclude that defense counsel in this case failed to object properly to the jury instruction.

struction must satisfy the requirement of Fed.R. Crim.P. 30 that counsel state "distinctly the matter to which he objects and the grounds of his objection." *See United States v. Clavey,* 565 F.2d 111, at 118 (7th Cir. 1977); *United States v. Wright,* 542 F.2d 975, 983–85 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977);[13] *United States v. Hollinger,* 553 F.2d 535, at 543 (7th Cir. 1977); *United States v. Lawson,* 507 F.2d 433, 443–44 (7th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). The fact that counsel for the defense twice tendered valid burden of proof instructions that were rejected by the court is not sufficient to satisfy Rule 30. *United States v. Lawson, supra,* at 443–44; *United States v. Gratton,* 525 F.2d 1161, 1162 (7th Cir. 1975). As this court held in *Gratton:*

> The mere offer of the instruction does not preserve the error for appeal. If the party whose tendered instruction is refused fails to object to the refusal, stating distinctly the grounds of his objection, the Court of Appeals may review the refusal to instruct only to determine whether it constitutes plain error within the meaning of Fed.R.Crim.P. 52(b).

525 F.2d at 1162. Thus, this court has made clear its view that counsel has an affirmative obligation to make the district court aware of any errors in its decision to reject a jury instruction and that counsel cannot "rely" upon the court's "own examination amidst the diverse pressures existent during the closing phases of a trial." *United States v. Wright, supra* at 985.

A careful examination of the Rule 30 hearing held by the court below demonstrates that counsel for the defendant failed to make a distinct objection to the court's self-defense instruction on the basis that it failed to assign properly the burden of proof. The defendant's first burden of proof instruction placed the self-defense issue in with the elements of the charge. Since the absence of self-defense is not an "element" of the charge, the court declined to read the instruction, but made clear its willingness to read a separate instruction on the burden of proof. (Tr. at 513–14). The better approach would have been for the court to read the defendant's tendered instruction and thereby avoid the ensuing confusion.[14] However, the court is not required to use the exact form of a submitted instruction. *See United States v. Martin,* 507 F.2d 428, 431 (7th Cir. 1974); *United States v. Hall,* 536 F.2d 313, 328 (10th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). The court's action in this case was not unreasonable, and therefore, there is no error in the court's treatment of that instruction.

The second instruction tendered by the defendant was a relatively long one and the court not unreasonably chose to read a shorter version presented by the prosecution. A comparison between the two in-

---

13. *United States v. Wright,* 542 F.2d 975 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977), was overruled by *United States v. Hollinger,* 553 F.2d 535 (7th Cir. 1977) on a different issue from that presented here. The court in *Hollinger* held that the requirement stated in *Wright* that counsel could not incorporate by reference his objections to the jury instructions discussed at the Rule 30 hearing was unduly restrictive. *Hollinger, supra,* at 543. *Hollinger* did not purport to alter the requirement that objections to jury instructions must be specific and distinct. As the *Hollinger* court stated, "where previously-voiced objections have met the requirement that the matter to which a party objects and the grounds thereof have been stated *distinctly,* we shall henceforth allow counsel to incorporate them by reference." *Id.* (emphasis supplied).

14. The district court's decision not to include the fourth paragraph because self-defense is not an element of the offense of assaulting a federal officer misconceived the basis for the Illinois Pattern Jury Instructions, Criminal § 25.05, on which defendant's tendered instruction was based. The instruction merely specifies each of the propositions which the prosecution is required to prove beyond a reasonable doubt. While there is no error in using a separate instruction on the burden of proof for self-defense, the clearest and simplest method of advising the jury as to what must be proven beyond a reasonable doubt is to list all the propositions subject to that standard. The Illinois Pattern Instruction is one good way to do that.

structions reveals that they differ in their treatment both of the "reasonable belief" question and the burden of proof issue. Defense counsel objected to the differences between the instructions regarding reasonable belief, but failed to mention their differences as to burden of proof. At that point in the hearing it was incumbent upon defense counsel to raise distinctly the specific ground for his objection. Given the district court's previously expressed willingness to read a burden of proof instruction on self-defense to the jury, it seems beyond dispute that a clear objection by defense counsel would have avoided the entire problem. It is unfortunate that this misunderstanding took place, especially since it may have deprived defendant of an important jury instruction. Nonetheless, defense counsel was in the best position to avoid this problem and he failed to act. The consequence of that failure is that the objection must be deemed waived.

Having concluded that defendant failed to object to the jury instruction, there remains the issue of whether the court's failure to give a burden of proof instruction constituted "plain error" within the meaning of Fed.R.Crim.P. 52(b).[15] We hold that it did not.

 In deciding whether a defect in a jury instruction is "plain error," we must examine the entire record before us, *United States v. Guy,* 456 F.2d 1157, 1164 (8th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972); *United States v. Johnson,* 515 F.2d 730, 736 (7th Cir. 1975), and determine whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty. *United States v. Wharton,* 139 U.S.App.D.C. 293, 299, 433 F.2d 451, 457 (1970); *United States v. Bernett,* 161 U.S.App.D.C. 363, 383, 495 F.2d 943, 963 (1974); *United States v. Johnson, supra* at 736. Several factors coalesce in this case to convince us that the failure to assign a specific burden of proof

on the self-defense issue was not plain error.

 First, the court did read a self-defense instruction to the jury, thereby presenting the defendant's theory of the case to the factfinder. *See United States v. Bernett, supra* at 963. In fact, the instruction made clear that if the jury accepted the defendant's version of the case it "should find him not guilty." (Tr. at 591). Second, defendant's counsel stated, without objection, in his closing argument that the prosecution had to prove the absence of self-defense beyond a reasonable doubt. (Tr. at 565).[16] While statements of the law in a closing argument cannot and do not substitute for jury instructions from the court, they have been relied on by appellate courts in determining whether there has been plain error. *See, e. g., United States v. Napue,* 401 F.2d 107, 110 (7th Cir. 1968), *cert. denied,* 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969); *United States v. Thomas,* 484 F.2d 909 (6th Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973). *Cf. United States v. Kahaner,* 317 F.2d 459, 477 (2d Cir. 1963) (used counsel's argument for getting defense's theory of the case to the jury). Finally, the evidence of defendant's guilt in this case is overwhelming. *See United States v. Pinto,* 503 F.2d 718, 724 (2d Cir. 1974). Even accepting defendant's theory that Officer Neris was the aggressor, which seems unlikely given the testimony to the contrary of three witnesses, it is hard to imagine why the defendant was required in defending himself to punch the officer in the face four or five times and then grab him by the hair and hit his head another four or five times on a steel rail, all the while screaming that he was going to kill the officer. Based on all three factors, we conclude that on this record taken as a whole it is very unlikely that the burden of proof omission had any effect on the jury's determination of this case, and

---

**15.** That rule provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Fed.R. Crim.P. 52(b).

**16.** *See* text accompanying note 10 *supra.*

therefore, we hold that the mistake did not constitute "plain error." [17]

AFFIRMED.

TONE, Circuit Judge, dissenting.

I disagree with the majority on the plain error question.[1] It is undisputed that the prosecution had the burden of proving absence of self-defense beyond a reasonable doubt. See note 12 of the majority opinion. Although apparently not constitutionally required in view of the discussion of the status of affirmative defenses under the Federal Constitution in *Patterson v. New York*, 432 U.S. 197, 211, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977), this rule is well established in federal criminal procedure; and the burden and standard of proof in a criminal case are important matters, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Given all this, I have trouble with the conclusion that it was not plain error to leave the jury in the dark as to which side had the burden of proving self-defense and what the standard of proof was. The error was not cured by defense counsel's statement in closing argument that the prosecution had the burden of proving absence of self-defense beyond a reasonable doubt. It

was the judge who was responsible for advising the jury on the law, and the jury was given the customary admonition to that effect. The prosecutor, in his argument, listed the propositions which the government was required to prove, and absence of self-defense was not one of them. Plainly, the jury was left with no reliable information on the burden and standard of proof as to the issue of self-defense.

There remains, therefore, only one basis on which the judgment might be affirmed, *viz.*, that the evidence of self-defense was so weak, in light of all the other evidence, that the omission to instruct properly was very unlikely to have had any effect on the verdict. I must admit that I too think it very unlikely that the jury would have found this issue in the defendant's favor even if they had been properly instructed. I have trouble, however, with "probable impact" as a test for plain error when the error in question was the failure to instruct the jury in such a way that they could properly decide a controlling issue in the case. Once it is conceded, as it is in this case, that there is sufficient evidence to support a finding of self-defense,[2] it follows that the issue was for the jury and not for us.

I therefore respectfully dissent.

---

**17.** Defendant raises two additional arguments in his brief. Since we find them both to be without merit, they do not require an extended discussion. First, defendant complains that the trial judge did not permit his wife to testify as to why the defendant was depressed at the time of the assault. The district court properly limited Mrs. Jackson's testimony to those facts "rationally based on the perception of the witness." Fed.R.Evid. 701. Mrs. Jackson could not perceive why the defendant was depressed.

Second, defendant objects to the court's instruction to the jury regarding his reasonable belief that Officer Neris was engaging in an unlawful use of force against the defendant. The jury was instructed that "[a] person is justified in the use of force when . . . he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." (Tr. at 591). We believe that the instruction is an accurate statement of the law.

**1.** I agree that defense counsel failed to comply with Fed.R.Crim.P. 30, as interpreted by our

decisions, although he did at one point bring the matter of burden and standard of proof on the self-defense issue to the judge's attention.

**2.** As the majority points out, the defendant's wife, corroborated by one witness, testified that the officer picked up a waste basket before the defendant initiated an assault. If the jury believed this and rejected other evidence, they could have concluded that the defendant's initial battery was a response to a reasonable apprehension of physical harm. From the wife's description of the ensuing two-way fight, the jury might have concluded that the officer was pursuing the fight aggressively and therefore it could not be determined beyond a reasonable doubt that the defendant had used excessive force. Although I would not have so found, and although I agree with the evaluation in the last paragraph of the majority opinion, the evidence would have permitted such a finding.